WILLIAM PARRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 29437. Promulgated July 25, 1930.

*Hal. M. Black, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, and *Phil M. Clark, Esq.*, for the respondent.

OPINION.

LANSDON : The respondent has determined that certain oil royalties were constructively received in 1920 and has included the amount thereof in petitioner's gross income, although payment was not actually received until some time in 1923.  In this appeal from such determination the petitioner contends that the royalties were not constructively received inasmuch as they were not available without

substantial limitation or restriction as to the time or manner of payment, and were not unqualifiedly subject to his demand within the meaning of the respondent's regulations which provide:

REG. 45, ART. 53.—*Income not reduced to possession.* Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made. A book entry, if made, should indicate an absolute transfer from one account to another. If the income is not credited, but is set apart, such income must be unqualifiedly subject to the demand of the taxpayer. * * *

The petitioner's income-tax return was filed on a cash receipts and disbursements basis, so that the royalties constitute income for 1920 only if they were constructively received.

The petitioner alleges that he could not receive the royalties without signing a division order, and that by so doing his position in the litigation would have been prejudiced. He testified that reputable legal counsel advised him not to sign the division order, since he might, by implication at least, admit the validity of the lease which he was contesting in the courts. We need not determine whether petitioner was correctly advised and whether his position would have been prejudiced by signing a division order, for in any event our decision as to whether the income was constructively received is not affected. If he elected not to take possession of income which was subject to his demands because of some benefit which would thereby accrue to him, the amount is nevertheless constructively received. *Marion Otis Chandler*, 16 B. T. A. 1248. The test as to constructive receipt is whether the debtor has funds standing to the credit of the taxpayer which the debtor is able to pay and which are available and subject to the taxpayer's demand. *John A. Brander*, 3 B. T. A. 231; *Ella C. Loose*, 15 B. T. A. 169; *Marion Otis Chandler*, *supra;* and *B. P. Bailey*, 18 B. T. A. 105. The division order is merely a form on which to make demand for payment which will serve as a justification for paying the purchase price to that particular person.

The petitioner's witness, Morgan, who was manager of the crude-oil and pipeline departments of the White Eagle Co. during the taxable year, testified that even if a division order had been signed by petitioner the accrued royalties would not have been paid without a bond of indemnity as provided in paragraph four of the division order. He makes a distinction between the petitioner's royalty and that accruing to the Jones, Stanley, and Sowers interests, which was paid to the Guaranty Title & Trust Co. and regular periods

during the taxable year, on the ground that under the provisions of the royalty assignment they would have been entitled to one-half of the working interest if petitioner had succeeded in having the lease canceled. For this reason, he says, payment would not have been made to petitioner without a bond. We can see no legal basis for Morgan's conclusions. Title to the land was not in controversy and petitioner was at all times the undisputed owner of so much of the royalty interest as he had retained. The only dispute as to ownership of the oil produced related to the lessees' seven-eighths interest. If the petitioner had been successful in having the lease canceled, he would have been entitled to all the oil produced from his land, except, of course, that portion accruing to the royalty interest which he had sold. If he had been unsuccessful in his legal actions, he still would have owned the retained royalty interest which produced the $38,860.95 herein involved. We think it is clear that the White Eagle Co. was at all times liable to him for the royalties credited to his account. Perhaps that company might have required a bond of indemnity, as Morgan testified, but it would not have been legally justified in so doing under the fourth clause of the division order. When petitioner's portion of the oil was delivered and sold the petitioner became a creditor of the corporation and as such he had a right to demand payment of his debt in money. *Commissioner* v. *Bingham*, 35 Fed. (2d) 503.

We can see nothing in the royalty assignments which might operate to defeat petitioner's right to one-sixteenth of the oil produced and sold. The clause, which we have quoted above, provides that in case of lapse or forfeiture of the original lease the petitioner and his wife shall have 60 days in which to execute a new lease and thereafter the parties of the second part may execute such new lease. In both assignments, however, there are expressly reserved to the petitioner and his wife all royalties in excess of that portion sold as well as any bonus.

The petitioner cites the case of *Faust* v. *United States*, 65 Ct. Cls. 676, where the Court of Claims held that certain fees received by an executor in 1917 for services rendered in 1914 were not constructively received. The facts of that case are distinguishable from those of the instant proceeding. There proper demand was made and payment refused. Also, there was some doubt whether the taxpayer was entitled to the amount claimed. Here, there has been no demand for payment and there is no doubt that petitioner is entitled to the royalties.

We are of the opinion that the amount of $38,860.95 was available to petitioner without substantial limitation or restriction and that the petitioner merely failed, neglected, or refused to make proper

demand therefor by signing a division order. The determination of the respondent is approved.

During the taxable year the petitioner sold a portion of his royalty interest for a total consideration of $130,000. He received $86,666.66 cash and a promissory note for the balance of $43,333.33, on which a cash payment of $13,333.33 was made. The facts disclose that the note was to be paid only if the royalty proved to be of sufficient value. We have found that the royalty was highly speculative and that promisor's ability to pay, aside from the royalty, would not have exceeded two or three thousand dollars. Section 202 (b) of the Revenue Act of 1918 provides:

When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; * * *

We think the note had no fair market value and that the respondent erred in including the unpaid balance thereof in computing profit from the transaction.

The respondent has allowed depletion deductions as to the north half of the northwest quarter of section 20 based on a one-eighth royalty interest. The abstract of title discloses that petitioner had disposed of a one-sixteenth royalty interest to the National Bank of Commerce of Wichita. The respondent concedes, however, that 885/1250 of the one-sixteenth royalty was held by the bank for petitioner. Depletion deductions should be recomputed on the basis of a royalty interest of one-sixteenth plus 885/1250 of one-sixteenth.

*Decision will be entered under Rule 50.*